# PRO SE

Edson Gardner, Uinta Indian Descendant, Attorney Pro-Se.
Lynda Kozlowicz, Ute Tribal Member, Attorney Pro-Se.
as Kozlowicz & Gardner advocates, Inc.,
Post Office Box 472
Fort Duchesne, Utah 84026
Telephone; (423) 722-8224 or 722-6707

July 24, 2012.

RECEIVED CLERK
JUL 25 2012
U.S. DISTRICT COURT

U.S. District Court
Office of the Clerk
350 South Main Street, Suite 150
Salt Lake City, Utah 84101-2180

Re; Hon. Poulson v. Ute Indian Tribe,
Case No. 2;12-CV-00497

The following **DEFENDANTS GARDNER AND KOZLOWICZ MOTION FOR
SUPPLEMENTAL ON RETALIATION FROM UTE TRIBE**, is submitted for
filing and review with United States District Court of Utah.
Please stamp and file.

Respectfully submitted.

Edson Gardner,
Attorney Pro-Se.

Lynda Kozlowicz,
Attorney Pro-Se.

1

Edson Gardner, Attorney Pro-Se.
Lynda Kozlowicz, Attorney Pro-Se.
Post Office Box 472
Fort Duchesne, Utah 84026
Telephone; (423) 722-8224 or 722-6707

FILED
U.S. DISTRICT COURT

2012 JUL 25  P 2:30

DISTRICT OF UTAH

IN THE UNITED STATES DISTRICT COURT FOR

BY _____
DEPUTY CLERK

THE DISTRICT OF UTAH CENTRAL DIVISION

Honorable Clair M. Poulson,
Judge of the Duchesne County
Justice Court, and Derek
Dalton,

              Plaintiff(s),

v.

Ute Indian Tribe of the
Uintah and Ouray Reservation,
Business Committee for the Ute
Tribe for the Uintah and Ouray
Reservation, Tribal Court for
the Ute Tribe of the Uintah and
Ouray Reservation, Irene C. Cuch,
in her official capacity as Chairman
of the Business Committee for the
Ute Tribe, Ronald J. Wopsock, in
his official capacity as vice-
chairman of the Business Committee
for the Ute Tribe, Frances Poowewgup,
in her official capacity as a Member
of the Business for the Ute Tribe,
Stuart Pike, Sr., in his official
capacity as a Member of the for the
Ute Tribe, Richard Jenks, Jr., in his
official capacity as a Member of the
Business for the Ute Tribe, Phillip
Chimburas, in his official capacity
as a Member of the Business for the
Ute Tribe, Honorable Smiley Arrowchis,
in his official capacity as Chief Judge
of the Ute Trial Court, Dean Reed, and

Civil No. 212-CV-00497

DEFENDANT GARDNER AND
KOZLOWICZ MOTION FOR
SUPPLEMENTAL ON
RETALIATION FROM
UTE TRIBE

1

Lynda Kozlowicz, Edson Gardner, and
Kozlowicz & Gardner Advocate, Inc., a
Ute Tribe Business License, and Athenya Swain.

        Defendant(s),    Magistrate Judge, E. J. Furse

---

**TO THE HONORABLE MAGISTRATE JUDGE EVELYN J. FURSE;**

Defendants Edson Gardner, Attorney Pro-Se, Uinta Indian Descendant, and Lynda Kozlowicz, Attorney Pro-Se, Ute Tribal Member, files Motion For Supplemental From Ute Tribe, and has asserted jurisdiction under 28 U.S.C. 1331 (federal question), 28 U.S.C. 1332 (diversity of citizenship), 28 U.S.C. 1367 (Supplemental), 25 U.S.C. 1302 (Indian Civil Rights Act), 28 U.S.C. 2254 (Writ), 25 U.S.C. 2719 (Indian Gaming Regulatory Act), and 42 U.S.C. (Title VII of the Civil Rights Act of 1964), deprivation of property interest in violation of rights, and wrongful termination, and intentional infliction of emotional distress on following;

### REASONS FOR GRANTING SUPPLEMENTAL MOTION OF DEFENDANTS

Defendant Gardner and Kozlowicz have yet to present their reasonable reliance defense to Ute Tribal Court, Fredericks Peebles & Morgan LLP, Ute Tribal Attorneys filed Memorandum, dated May 11, 2010, UTBC: Licensing and Zoning Authority of Fee Lands Owned by Tribal Member and Non-Indian (**attached herein**)(citing Ute Indian Tribe of the Utah and Ouray Reservation v. State of Utah, 114 F. 3d 1513 (10th Cir.

2

1997) (Ute V.), even though Ute Tribal Committee, But more importantly, Letter from Chairwoman Ute Tribal Business Committee, Irene C. Cuch, have filed Re; KOZLOWICZ & GARDNER ADVOCATES, INC, dated July 10, 2012 (**attached herein**), not only reasonably, the Ute Tribal Court has ever addressed effect of Letter from Executive Director Ute Tribe, Michelle M. Sabori, have filed Re; Suspension; dated July 18, 2012 (**attached herein**), on Plaintiff Poulson and Dalton, nor its effect on those Indian persons excluded from Utah State laws who are living at the time in Indian Country 18 U.S.C. 1151 enactment. As potential for friction between 1990 Amendment to Indian Civil Rights Act 25 U.S.C. 1301(4), over all Indians, and Utah State law, need for clear judicial interpretation of Public Law 83-280 becomes ever more urgent. At no time have either Ute Tribe or State of Utah ever complied with the requirements for relinquishing and Tribe's jurisdiction under Public Law 83-280 as Amended by the Tribal Law and Order Act, July 29, 2010 (**attached herein**).

### A.   Uintah and Ouray Reservation Restored lands.

The Ute Indian Tribe of the Uintah and Ouray Reservation v. State of Utah, 114 F. 3d 1513 (10th Cir. 1997)(Ute V.), Mix-blood Indian lands are in Indian Country, 18 U.S.C. 1151 and Defendant Gardner and Kozlowicz are recognized as

3

successer to signatories of treaty, as in <u>Grands Traverse Band of Ottawa and Chippewa Indians v. Office of U.S. Attorney</u>, 369 F. 3d 960 (6th Cir. 2004), acquired trust lands qualify as restored, and as land restored pursuant as to <u>Indian Gaming Regulary Act</u>, 25 U.S.C. 2719. The restored Indians in United <u>States v. Lara</u>, 541 U.S. 193 (2004)(citing <u>United State v. Long</u>, 324 F. 3d 475 (7th Cir. 2003)), subject of an Act of Congress of termination federal supervision over property and members of tribe, and whose powers were later legislatively restored, fail within dual sovereignty exception to double jeoparty clause, Revered and remanded, and filed injunctive relief.

**B.   The Ute Tribal Committee's Letters Prohibiting Defendant Gardner and Kozlowicz are Presenting Evidence Of Reasonable Reliance On Published Ute Tribal Court Opinions Directly Contradicts Holdings Of Court Regarding Due Process Of Law**

Violation of equal protection or taking of property without compensation is permitted and right to file for claims is been denied by Ute tribal forum to bring Indian Civil Rights Act claims in Ute Tribal Court. The Ute Tribal members remedy actually have been sought and refused. <u>White v. Pueblo of San Juan</u>, 728 F. 2d 1307 (10th Cir. 1984). The Tenth Circuit interpreted as holding, denial of access to tribal courts to assert ICRA claim can give rise to federal

4

jurisdiction, but when the aggrieved party actually sought
tribal remedy, party found merely alleged of its futility. The
United States Supreme Court has held person cannot be
convicted of crime if they undertook prohibited conduct in
reasonable reliance upon published interpretation of law.
United States v. Careres, 440 U.S. 741 (1979). The defense of
mistake of law is based on due process clause contained in
Fifth and Fourteenth Amendment to U.S. C onstitution. Cox v.
Louisiana, 379 U.S. 559 (1965), Bouie v. City of Columbia, 378
U.S. 347 (1964). The Utah legislature has codified this rule
as Section 76-2-304(2).

C. **Ute Tribal Business Committee Members Has Divested
   Indians Of Federally Reserved Civil Rights Within
   Violation Of 14th Amendment And 42 U.S.C. 1983**.

Title 42 of United States Code Section 1983 provides a
remedy for deprivation under color of state law, of "any
rights...secured by the Constitution and laws of the United
States." 42 U.S.C. 1983 (section 1983). To state a claim under
Section 1983, a plaintiff must allege facts that show a
deprivation of a right, privilege, or immunity secured by the
Constitution or federal law by a person acting under color of
state law. Lopez v. Dep't of Health Services, 939 F.2d 881,
883 (9th cir. 1991), citing Daniels v. Williams, 474 U.S. 327
(1986). The Plaintiff in a section 1983 action may seek a

5

declaration that his or her rights have been violated, as well
as an order of the court enjoining defendants from engaging in
the illegal practices in the future. Will v. Michigan
Department of State Police, 491 U.S. 58, 71, n.10 (1989);
Johnson v. Railway Express Agency, 421 U.S. 454, 460
(1975)(declaratory and injunctive relief available for
violations of 42 U.S.C. 1981). The federal right at issue need
not derive only from equal rightslaws; the phase "and laws" in
the text of section 1983 refers generally to all federal
statutory law. Maine v. Thiboutot, 448 U.S. 1, 6-8 (1980).
Another determining factor in the scope of section 1983
coverage is whether the federal right asserted is one that
protects the individual against government intrusion. Hoopa
Valley Tribe v. Nevins, 881 F.2d 657, 662 (9th Cir. 1989). To
evaluate whether a federal right has been violated, courts
have considered whether the constitutional or statutory
provision in question creates obligations binding on a
governmental entity rather than simply stating a finding or
congressional preference. Golden State Transit Corp. v. Los
Angles, 493 U.S. 103 (1989). The right or interest plaintiff
claims must not be so abstract as to be "beyond the competence
of the judiciary to enforce." Wright v. Roanoke Redevelopment
and Housing Authority, 479 U.S. 418 (1987). Here, individual

6

plaintiffs, Gary and Frank seek relief from deprivation of their federally reserved right to fish at their usual and customary fishing grounds on what is now known as the Yurok Indian Reservation, as well as relief from seizure of property fish and fishing gear) without due process. As discussed in section IV, the tribe's federally reserved fishing right was derived from federal law, the Act of March 1853 (10 stat. 238). As individual members of the tribe, Gary and Frank Dowd enjoy the rights as users in tribal property derived from the legal property right of the tribe of which they are members. In United States v. Dion, 476 U.S. 734, 738 n. 4 (1986). the Supreme Court stated that tribal members can enforce treaty fishing rights.  As discussed in section IV, the distinction between a right reserved by treaty and right reserved by statute is not significant. Blake v. Arnett, 663 F.2d 906, 909 (9th Cir. 1981). Kimball v. Callahan, 590 F.2d 768, 773 (9th Cir. 1979). A tribe's federally reserved fishing rights have legal force in that they preempt state regulations of Indian fishing on Indian lands and are protected against non-federal interests. See, Parravano v. Masten, 70 F.3d 539 (9th Cir. 1995); Arnett v. Five Gill Nets, 48 Cal. App. 3d 454 (1975). This Court can enforce the Dowds' fishing rights through a declaration of the extent and nature of those rights and by

7

enjoining the Director and the Department from citing the
Dowds for fish and Game Code violations, from interfering with
the Dowds' federally reserved fishing rights, and from seizing
fish taken and fishing nets owned by the Dowds in violation of
federal laws. The Director and the Department acted under
color of State law in depriving the Dowds of their federally
created fishing right. In an official-capacity action for a
governmental entity, the official will be held liable under
Section 1983 when the entity itself is a "moving force" behind
the deprivation. Monell v. Dep't of Soc. Servs., 436 U.S. 658,
690 (1978). That is to say, the entity's "policy or custom"
must have played a part in the violation of federal law.
Kentucky v. Graham, 473 U.S. 159, 166 (1985). Here, the
Director is employed by the State of Calfornia, is acting in
his official capacity, and is exercising his responsibilities
to enforce the Calfornia Fish and Game Code pursuant to
Calfornia law. Through his General Counsel, the Director has
stated that the Department does not recognize the tribe's
federally reserved fishing right and that the Department may
enforce the Fish and Game Code against tribal members, such as
Dowds, fishing in their historic fishing grounds on the
Klamath River. Marston Declaration, As Director has stated
that it is the policy of the Department to interfere with

8

Resighini members' federally reserved right to fish and to
seize tribal members' fishing gear and fish caught on the
Klamath reserved right to fish and to seize tribal members'
fishing gear and fish caught on the Klamath River under color
of the California Fish and Game Code. The Director has firmly
stated his intentions to illegally enforce the fish and Game
Code against members of the Tribe. Without the remedy afforded
by section 1983, the Director and officers under his control
will continue to divest the Dowds and other members of the
tribe of their right to their subsistence fishery within
the boundaries of the Old Klamath River Reservstion. Such
State action cannot be squared with 42 U.S.C. 1983.

     **D.  Ute Tribal Regulation.**

     The Ute Tribal Court has substantial power to regulate
non-Indians engaged in activity in Indian country, affects
Indians interests. Washington v. Confederated Tribes of the
Colville Reservation, 447 U.S. 134 (1980). Ute tribe may
regulate, through taxation, licensing, or other means,
activties of nonmembers who enter consensual relationships
with Ute tribal Indians, through commercial dealings,
contracts, leases, or other arrangements. Montana v. United
States, 450 U.S. 544 (1981). Thus Ute tribe may regulate on-
reservation repossession of moter vehicles by off-reservation

dealers. Babbitt Ford, Inc. v. Navajo Indian Tribe, 710 F. 2d
587 (9th Cir. 1983). The Ute tribe was held to have an
insufficient interest to permit regulation of hunting and
fishing by non-Indians on fee lands they owned within
reservation. The Supreme Court acknowledged, and Ute Tribe may
retain inherent power to exercise civil authority over conduct
of non-Indians on fee lands within its reservation when
conduct threatens or has some direct effect on political
intergrity, economic security, or health or welfare of
Indians. The Ute Tribal Court have been able to enforce
building, health and safety, and zoning regulations, against
non-Indians fee owners within Indian reservations. Cardin v.
De La Cruz, 671 F. 2d 363 (9th Cir. 1982), and Knight v.
Shoshone and Arapaho Indian Tribes, 670 F. 900 (10th Cir.
1982), and Confederated Tribes and Bands of Yakima Indian
Nation v. Whiteside, 828 F. 2d 529 (9th Cir. 1987).

WHEREFORE, The ute tribal business committee prohibiting
Defendant Gardner and Kozlowicz from presenting evidence of
reasonable reliance on published federal court opinions or
congressional acts, or amendments to tribal and federal laws
directly contradicts holding of this Court regarding due
process of law, and holding effect of Utah State law against
Defendant Gardner and Kozlowicz is an important question of

10

federal law which has never been addressed by Ute Tribal Court
and federal court and of which State of Utah Court have no
authority to determine. All of lands and waters within Indian
Country, 18 U.S.C. 1151, all provisions of Utah Code are
civil/regulatory under P.L. 280, the State of Utah has no
jurisdiction to regulate Indian Civil Rights of Indians within
boundaries of Uintah and Ouray Reservation, on Indian Country
set aside for Indians. The State of Utah has no jurisdiction
to enforce provision of Utah State Code against Indians on
Uintah and Ouray Reservation within boundaries of Indian
Country. For the forgoing reasons, Defendant Gardner and
Kozlowicz Motion For Supplemental On Retaliation From Ute
Tribe should be granted.

Respectfully submitted this day _24_ of July 2012.

Edson Gardner, Uintah
Indian Descendant,
Attorney Pro-Se.

Lynda Kozlowicz,
Ute Tribal Member,
Attorney Pro-Se.

11



FILED
BY _____
MAY 12 2010
UTE INDIAN TRIBAL COURT
FT. DUCHESNE, UTAH 84026

**FREDERICKS PEEBLES & MORGAN LLP**

ATTORNEYS AT LAW

ALVINA L. LEE
1900 Plaza Drive
Louisville, CO 80027
Telephone: (303) 673-9600
Direct: (303) 815-1705
Fax: (303) 673-9155
E-Mail: alee@ndnlaw.com
www.ndnlaw.com

# MEMORANDUM

## CONFIDENTIAL COMMUNICATION

TO:        **Tom Fredericks, Senior Partner**

FROM:    **Alvina Lee, Law Clerk**

DATE:    **May 11, 2010**

RE:        **UTBC: Licensing and Zoning Authority of Fee Lands Owned by Tribal Member and Non-Indian**

---

This memorandum addresses the issue of whether Stockman's, a restaurant owned in fee and operated by an enrolled member of the Ute Indian Tribe ("Tribe") and her husband, a non-Indian, located in Fort Duchesne, Utah, is subject to the licensing and/or zoning regulatory authority of the Tribe or the county.

## I.    Uintah and Ouray Reservation: Tribal Jurisdiction

### a.  Ute Indian Tribe v. Utah Cases

In a series of cases commonly known as the *Ute Indian Tribe v. Utah* cases, the extent of tribal jurisdiction over the Uintah and Ouray Reservation was determined and finally resolved by the Tenth Circuit Court of Appeals in 1997. *See Ute Indian Tribe v. Utah*, 114 F.3d 1513, 1519 (10th Cir. 1997) (hereinafter "*Ute V*"). In *Ute V*, the Court determined that its mandate in *Ute III* should be modified only to the extent that it conflicted with *Hagen v. Utah. Ute V*, 114 F.3d at 1520; *Hagen v. Utah*, 507 U.S. 1028, 123 L. Ed. 2d 466, 113 S. Ct. 1840 (1993). In fact, the Court noted "*Hagen's* only effect was to reduce (and not terminate) the boundaries of the Uintah Valley Reservation to the extent that lands within the Reservation were unallotted, opened for settlement under the 1902-1905 legislation, and not thereafter returned to tribal ownership." *Ute V*, 114 F.3d at 1528. Accordingly, the Court held that its prior ruling in *Ute III* should be modified to the extent that lands within the original reservation boundaries that were unallotted, opened to non-Indian settlement under the 1902-1905 legislation, and not thereafter returned to

tribal ownership were no longer a part of the Uintah Valley Reservation. *Id.* Therefore, in line with *Hagen,* the Uintah Valley Reservation was diminished with respect to those areas that did not return to tribal ownership and such lands are no longer within Indian country.

The Court noted that its prior ruling addressed three diminishment issues and that the only issue addressed by the Supreme Court in *Hagen* was the diminishment of the Uintah Valley Reservation pursuant to the return of such lands to the public domain under legislation enacted from 1902 to 1905. *Ute V*, 114 F.3d at 1528. Therefore, *Hagen* did not affect the Tenth Circuit's determination regarding the 1905 National Forest Land or the status of the Uncompahgre Reservation. *Id.* The Court also held that certain "nontrust lands" also remained Indian Country; lands that passed from trust to fee status pursuant to non-Indian settlement under the 1902-1905 allotment Acts. *Ute V*, 114 F.3d at 1528-1529. The Court specifically identified those lands as follows:

> (1) Lands apportioned to the mixed blood Utes under the Ute Partition Act, Act of Aug. 27, 1954, Pub. L. No. 97-698, ch. 1009, 68 Stat. 868 (codified at 25 U.S.C. §§ 677-677aa);
>
> (2) Lands allotted to individual Indians that have passed into fee status after 1905; and
>
> (3) Lands that were held in trust after the Reservation was opened in 1905 but that since have been exchanged into fee status by the Tribe for then-fee (now trust) lands in an effort to consolidate its land holdings pursuant to the Indian Reorganization Act, Act of June 18, 1934, ch. 576, 48 Stat. 984 (codified at 25 U.S.C. §§ 461-79) and the Indian Land Consolidation Act of 1983, Pub. L. No. 97-459, 96 Stat. 2517 (codified at 25 U.S.C. §§ 2202-11).

*Ute V*, 114 F.3d at 1529. The Court concluded that "Indian country extends to all trust lands, the National Forest Lands, the Uncompahgre Reservation, and the three disputed categories of non-trust lands [discussed above] that remain within the boundaries of the Uintah Valley Reservation." *Ute V*, 114 F.3d at 1530-1531. The Court further determined that "[t]he state and local defendants have jurisdiction over the fee lands removed from the Reservation under the 1902-1905 allotment legislation." *Id.*

### b.  *Cooperative Agreements on Tribal Jurisdiction*

Shortly after the Tenth Circuit Court issued its mandate in *Ute V*, Duchesne County and Uintah County moved the district court to remove the preliminary injunction with respect to lands held to be no longer a part of the Uintah and Ouray Reservation. The district court delayed on the motion at the request of the parties to give them an opportunity to negotiate matters of common interest.

In an effort to reacquire misdemeanor jurisdiction over its members who may perform illegal activities on lands designated as no longer lying within Indian country as determined by the Supreme Court in *Hagen* and the Tenth Circuit Court in *Ute V*, the Ute Indian Tribe engaged in negotiations with the state and the counties. *See* Ute Indian Tribal Business Committee, Resolution No. 98-228, No. 98-229 and No. 98-230 (Sept. 22, 1998). The Tribe, State of Utah,

Duchesne County and Uintah County developed a series of agreements addressing misdemeanor offenses, mutual assistance in law enforcement and disclaimer of civil and regulatory of the Tribe for those lands no longer designated as Indian country within the original boundaries of the Uintah Valley Reservation. On September 22, 1998, the Ute Indian Tribal Business Committee formally approved all three of these agreements by resolution. *See* Ute Indian Tribal Business Committee, Resolution No. 98-228, No. 98-229 and No. 98-230 (Sept. 22, 1998).

The first agreement entitled, "Cooperative Agreement to Refer Tribal Members Charged with Misdemeanor Offenses to Tribal Court for Prosecution," permitted the Tribe to exercise misdemeanor jurisdiction over its members on homesteaded lands despite the *Hagen* decision. *See Cooperative Agreement to Refer Tribal Members Charged with Misdemeanor Offenses to Tribal Court for Prosecution*, Resolution No. 98-228 (Oct. 14, 1998). Specifically, this Agreement required that the state and counties decline to exercise misdemeanor jurisdiction over tribal members on lands within the original boundaries of the Uintah and Ouray Reservation which are no longer "Indian country" and deferring to the Tribe the prosecution of tribal members as provided in the Ute Tribe Law and Order Code, while providing that tribal members who object to being subject to tribal authority for misdemeanors arising on non-reservation lands retain their right to be prosecuted in the courts of the state. *Id.*, at p. 3.

The second agreement entitled, "Cooperative Agreement for Mutual Assistance in Law Enforcement," permitted law enforcement officers of the Tribe and Bureau of Indian Affairs to arrest, hold and transfer for prosecution non-Indians in the courts of the state. *See Cooperative Agreement for Mutual Assistance in Law Enforcement*, Resolution No. 98-229 (October 14, 1998). The Agreement also permitted law enforcement officers of the state and counties to arrest, hold and transfer for prosecution members of the Tribe in courts of the Tribe. Specifically, the Agreement provided for the cross-deputization of Tribal, BIA, state and county law enforcement personnel. *Id.*, at p. 3. Such cross-deputization authorizes the law enforcement officers to exercise reciprocal peace officer powers within the Uintah and Ouray Reservation and in those areas within the original confines of the Reservation which were held to no longer be a part of the Reservation. *Id.*

The third and final agreement entitled, "Disclaimer of Civil/Regulatory Authority," was executed as an inducement to the state and counties to enter in the Agreements mentioned above. *See Disclaimer of Civil/Regulatory Authority*, Resolution No. 98-230 (Oct. 14, 1998). Under the Disclaimer Agreement, the Tribe agreed to refrain from exercising certain civil and regulatory jurisdiction over lands of the Reservation that are now owned by non-Indians. *Id.* However, the Tribe retained civil and regulatory authority over non-Indian lands if the activities thereon: (1) threaten the health, safety or welfare of the Tribe or its members; or (2) involve mixed-blood hunting activities, alcohol regulation, minerals held in trust by the United States or use of water claimed by or through the Tribe. *Id.*

## II.   <u>Discussion</u>

As discussed above, the only issue addressed by the Supreme Court in *Hagen* was the diminishment of the Uintah Valley Reservation pursuant to the return of such lands to the public domain under legislation enacted from 1902 to 1905. *Ute V*, 114 F.3d at 1528. The Tenth Circuit Court concluded that "Indian country extends to all trust lands, the National Forest Lands, the Uncompahgre Reservation, and the three disputed categories of non-trust lands that

remain within the boundaries of the Uintah Valley Reservation." *Ute V*, 114 F.3d at 1530-1531. The three disputed categories of non-trust lands were identified as those lands apportioned to the mixed blood Utes under the Ute Partition Act, Act of Aug. 27, 1954, Pub. L. No. 97-698, ch. 1009, 68 Stat. 868 (codified at 25 U.S.C. §§ 677-677aa); lands allotted to individual Indians that have passed into fee status after 1905; and lands that were held in trust after the Reservation was opened in 1905, but that since have been exchanged into fee status by the Tribe for then-fee (now trust) lands in an effort to consolidate its land holdings pursuant to the Indian Reorganization Act, Act of June 18, 1934, ch. 576, 48 Stat. 984 (codified at 25 U.S.C. §§ 461-79) and the Indian Land Consolidation Act of 1983, Pub. L. No. 97-459, 96 Stat. 2517 (codified at 25 U.S.C. §§ 2202-11). *Ute V*, 114 F.3d at 1529. The Tenth Circuit Court further stated that "[t]he state and local defendants have jurisdiction over the fee lands removed from the Reservation under the 1902-1905 allotment legislation." *Id* ~~homestead act~~

Although the Tribe did in fact disclaim civil and regulatory authority over lands designated as "Indian County" by the Tenth Circuit Court in *Ute V*, and owned by non-Indian persons in fee, the Tribe included a reservation within the disclaimer which provides the Tribe with the right to "assert regulatory authority in those limited circumstances in which the Tribe is able to establish, by clear and convincing evidence, that conduct on land which is part of the Reservation and 'Indian country,' as defined by 18 U.S.C. §§ 1151, which is owned by persons who are not members of the Tribe, poses a direct threat to the health, safety or welfare of the Tribe or its members." *Disclaimer*, at p. 2, subpart A.

We understand that the land upon which Stockman's is located is allotted land currently owned in fee by an enrolled member of the Ute Indian Tribe and her non-Indian spouse. As such these lands would most likely fall within the one of the three disputed categories of non-trust lands; specifically the category referred to as "lands allotted to individual Indians that have passed into fee status after 1905." *Ute V*, 114 F.3d at 1529. Assuming that such lands were allotted and passed into fee status after 1905 and that such lands do not fall within the class of lands that passed from trust to fee status pursuant to non-Indian settlement under the 1902-1905 allotment Acts, according to *Ute V*, such lands would be classified as Indian country for jurisdictional purposes. As such, the Ute Indian Tribe would have all rights to regulate the zoning and licensing requirements over such lands.

## III.   Conclusion

Based on the discussion above, we have concluded that the lands upon which Stockman's is located is subject to tribal zoning and licensing regulations to the extent that such lands do not fall within the class of lands identified by the U.S. Supreme Court in *Hagen* that passed from trust to fee status pursuant to non-Indian settlement under the 1902-1905 allotment Acts. Assuming that such lands were allotted lands and are now owned by an enrolled member of the Ute Indian Tribe, the lands are classified as Indian county and the Tribe has exclusive jurisdiction to regulate activities occurring on such lands and the state and Uintah County do not have jurisdiction.

Furthermore, although the Tribe has disclaimed civil and/or regulatory authority over certain lands located within the Uintah Valley Reserve, the disclaimer only applies to those lands of the Reservation that are now owned by non-Indians. The land upon which Stockman's is located is owned by an enrolled member of the Tribe and therefore, would not be subject to the disclaimer.

~~Hagen from trust 1900-a~~



**UTE INDIAN TRIBE**
P. O. Box 190
Fort Duchesne, Utah  84026
Phone (435) 722-5141 • Fax (435) 722-5072

July 10, 2012

**SENT VIA HAND DELIVERY**

Michelle Sabori
Executive Director
Ute Indian Tribe

> **RE:   KOZLOWICZ & GARDNER ADVOCATES, INC.**

Dear Ms. Sabori:

As Executive Director, you are tasked with the supervision of lay advocates (also referred to as lay counselors or lay officers). *See* Ute Ordinance No. 04-003 *amending* U.L.O.C. § 1-3-4(2). It has come to the attention of the Ute Tribal Business Committee ("Business Committee") that Kozlowicz & Gardner Advocates, Inc., have been filing suit against parties of whom the Ute Tribal Court has no personal or subject matter jurisdiction (i.e., state and/or county officials). *See e.g., Reed v. Dalton*, Case No. CV12-1111 (Ute Indian Tribal Court 2012), *Swain v. Poulson*, Case No. CV12-207 (Ute Indian Tribal Court 2012), *In the Matter of Severance: Farmcreek Reed Cemetery and Tribal Right-a-way* [sic], Case No. 09-039 (Ute Indian Tribal Court 2009).

Tribal court subject matter jurisdiction over tribal members is first and foremost a matter of internal tribal law. *See* COHEN'S HANDBOOK, § 7.02[1][a], p. 599. However, tribal court jurisdiction over nonmembers is of a different matter.   A tribe's exercise of adjudicative jurisdiction over non-Indians or nonmembers does raise questions of federal law, however, reviewable in federal court.  *Id.*  A tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction as to nonmembers. *See Strate v. A-1 Contractors*, 20 U.S. 438, 442 (1997).  The Supreme Court has also stated that a tribe lacked adjudicative jurisdiction over state officers conducting an on-reservation investigation for an alleged off-reservation crime.  *See Nevada v. Hicks*, 533 U.S. 353, 358 (2001)(notwithstanding absence of any mention of tribes in 42 U.S.C. § 1983, tribal courts have no jurisdiction to hear certain claims under that statute).  As a general matter, the tribal courts do not possess authority over non-Indians who come within their borders.  *See Montana v. United States*, 450 U.S. 544, 565 (1981)(the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe).  Nothing in the language of the Indian Civil Rights Act § 1302, its legislative history or its subsequent construction has been read to mandate that Indian tribes exercise civil authority over non-Indians coextensive with tribal civil authority over tribal members  *MacArthur v. San Juan County*, 405 F.Supp.2d 1302, 1315 (D. Utah 2005).

July 10, 2012
Page 2

Despite previous rulings by the Tribal Court indicating this point, Kozlowicz & Gardner Advocates, Inc. have insisted on filing additional suits against county and/or state officials in Tribal Court. As lay advocates practicing in the Tribal Court, Ms. Kozlowicz and Mr. Gardner are to abide by the American Bar Association Code of Ethics. *See* Ute Ordinance No. 96-005, sec. (2)(a); MODEL RULES OF PROFESSIONAL CONDUCT Rule 3.1 (1983).

Plaintiffs, Judge Clair M. Poulson and (former) Duchesne County Sheriff's Deputy Derek Dalton recently filed a complaint in federal court against the Ute Indian Tribe, the Ute Tribal Business Committee, Business Committee members in their individual official capacities, the Tribal Court, the Tribal Court Chief Judge in his individual official capacity, Dean Reed, Lynda Kozlowicz, Edson Gardner, Kozlowicz & Gardner Advocates, Inc., Athena Swain, and Johnny Slim, Sr. in Case No. 2:12-cv-00497 (hereinafter referred to as the "*Poulson* case"). This federal complaint brings to the forefront the jurisdictional issues created when lay advocates file suit against county officials in tribal court. Furthermore, the federal complaint implies that the Tribe is somehow supportive of the actions of Kozlowicz & Gardner Advocates, Inc.

The Business Committee is concerned with the practices of Kozlowicz & Gardner Advocates, Inc. In presenting themselves as "tribal advocates," Ms. Kozlowicz and Mr. Gardner have created the misperception that they are advocates and representatives *on behalf of and for the Tribe.* (emphasis added). Most concerning, though, is the repeated filing of cases against state and county officials. Given previous admonishments to Ms. Kozlowicz and Mr. Gardner by the Court concerning the lack of jurisdiction over county and state officials, the Business Committee respectfully request that you, as Executive Director and supervisor of lay advocates practicing in the Tribal Court, review Kozlowicz & Gardner Advocates, Inc. and consider a suspension of their practices. Enclosed is a proposed letter to Kozlowicz & Gardner Advocates, Inc.

The Business Committee finds cases involving questions of jurisdiction to be an important matter of self-government and inherent sovereignty. The exercise of jurisdiction by our Tribal Court is one of the most visible aspects of self-determination. It is important to the Business Committee and the Tribe that we protect the Tribal Court from challenges to its jurisdiction. Thank you for your consideration.

Sincerely,

Irene C. Cuch, Chairwoman
Ute Tribal Business Committee



**UTE INDIAN TRIBE**
P. O. Box 190
Fort Duchesne, Utah 84026
Phone (435) 722-5141 • Fax (435) 722-5072

July 18, 2012

**SENT VIA CERTIFIED U.S. MAIL**

Kozlowicz & Gardner Advocates, Inc.
ATTN: Lynda Kozlowicz and Edson Gardner
P.O. Box 472
Fort Duchesne, Utah 84026

    **RE:   SUSPENSION**

Dear Ms. Kozlowicz and Mr. Gardner:

    As Executive Director, I am tasked with the supervision of lay advocates (also referred to as lay counselors or lay officers). *See* Ute Ordinance No. 04-003 *amending* U.L.O.C. § 1-3-4(2). It has come to my attention that you, as Kozlowicz & Gardner Advocates, Inc., have been filing suit against parties of whom the Ute Tribal Court has no personal or subject matter jurisdiction. *See e.g., Swain v. Poulson*, Case No. CV12-207 (Ute Indian Tribal Court 2012), *In the Matter of Severance: Farmcreek Reed Cemetery and Tribal Right-a-way* [sic], Case No. 09-039 (Ute Indian Tribal Court 2009).

    Tribal court subject matter jurisdiction over tribal members is first and foremost a matter of internal tribal law. *See* COHEN'S HANDBOOK, § 7.02[1][a], p. 599. However, tribal court jurisdiction over nonmembers is of a different matter. A tribe's exercise of adjudicative jurisdiction over non-Indians or nonmembers does raise questions of federal law, however, reviewable in federal court. *Id.* A tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction as to nonmembers. *See Strate v. A-1 Contractors*, 20 U.S. 438, 442 (1997). The Supreme Court has also stated that a tribe lacked adjudicative jurisdiction over state officers conducting an on-reservation investigation for an alleged off-reservation crime. *See Nevada v. Hicks*, 533 U.S. 353, 358 (2001)(notwithstanding absence of any mention of tribes in 42 U.S.C. § 1983, tribal courts have no jurisdiction to hear certain claims under that statute). As a general matter, the tribal courts do not possess authority over non-Indians who come within their borders. *See Montana v. United States*, 450 U.S. 544, 565 (1981)(the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe). Nothing in the language of the Indian Civil Rights Act § 1302, its legislative history or its subsequent construction has been read to mandate that Indian tribes exercise civil authority over non-Indians coextensive with tribal civil authority over tribal members *MacArthur v. San Juan County*, 405 F.Supp.2d 1302, 1315 (D. Utah 2005).

July 18, 2012
Page 2

Thus, you cannot establish a basis for jurisdiction to sue county and/or state officials in the Ute Tribal Court. Despite previous rulings by the Tribal Court indicating this point, as Kozlowicz & Gardner Advocates, Inc., you have insisted on filing additional suits against county and/or state officials in Tribal Court.

As lay advocates practicing in the Tribal Court, you are to abide by the American Bar Association Code of Ethics. *See* Ute Ordinance No. 96-005, sec. (2)(a). The Code of Ethics is referred to as "Rules of Professional Conduct." You are in violation of Rule 3.1 Meritorious Claims And Contentions. *See* MODEL RULES OF PROFESSIONAL CONDUCT Rule 3.1 (1983).

This letter hereby serves as notice to you, Lynda Kozlowicz and Edson Gardner, that you are <u>suspended</u> from any practice in the Ute Tribal Courts as lay advocates for a period of ninety (90) days from July 18, 2012. You may be reinstated to practice as lay advocates on October 17, 2012.

Thank you for your cooperation.

Sincerely,

Michelle M. Sabori
Executive Director
Ute Indian Tribe


xc: Ute Tribal Business Committee
    Ute Tribal Court Judges
    Ute Tribal Court Staff

**Public Law 83-280 as Amended by the Tribal Law and Order Act**
**July 29, 2010**

The Tribal Law and Order Act of 2010 makes several amendments to Public Law 83-280 to enhance federal criminal authority within the "mandatory" P.L. 280 states. In order to assist tribes in understanding these important changes to federal law, NCAI provides the following demonstration of how the Tribal Law and Order Act amends P.L. 280. The amendments to ICRA marked in **bold**.

This document is intended only as a guide for tribal leaders on the passage of the Tribal Law and Order Act. It is not an official version. Tribal leaders should consult federal legal sources once the Act has been codified to see where and how the provisions of the Tribal Law and Order Act are incorporated into existing federal law.

### Public Law 83-280 (18 U.S.C. § 1162, 28 U.S.C. § 1360, 25 U.S.C. § 1321-1326)

### 18 U.S.C. § 1162. State Jurisdiction over offenses committed by or against Indians in the Indian country

(a) Each of the States or Territories listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

| State or Territory of | Indian country affected |
|---|---|
| Alaska | All Indian country within the State, except that on Annette Islands, the Metlakatla Indian community may exercise jurisdiction over offenses committed by Indians in the same manner in which such jurisdiction may be exercised by Indian tribes in Indian country over which State jurisdiction has not been extended. |
| California | All Indian country within the State. |
| Minnesota | All Indian country within the State, except the Red Lake Reservation. |
| Nebraska | All Indian country within the State |
| Oregon | All Indian country within the State, except the Warm Springs Reservation. |
| Wisconsin | All Indian country within the State. |

(b) Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; or shall deprive any Indian or any Indian tribe, band, or community of any right, privilege, or immunity afforded under Federal treaty, agreement, or statute with respect to hunting, trapping, or fishing or the control, licensing, or regulation thereof.

(c) The provisions of sections 1152 and 1153 of this chapter shall not be applicable within the areas of Indian country listed in subsection (a) of this section as areas over which the several States have exclusive jurisdiction.

**(d) Notwithstanding subsection (c), at the request of an Indian tribe, and after consultation with and consent by the Attorney General—**
> **(1) sections 1152 and 1153 shall apply in the areas of the Indian country of the Indian tribe; and**
> **(2) jurisdiction over those areas shall be concurrent among the Federal Government, State governments, and, where applicable, tribal governments.**

28 U.S.C. § 1360. State civil jurisdiction in actions to which Indians are parties

(a) Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State:

| State of | Indian country affected |
|---|---|
| Alaska | All Indian country within the State. |
| California | All Indian country within the State. |
| Minnesota | All Indian country within the State, except the Red Lake Reservation. |
| Nebraska | All Indian country within the State |
| Oregon | All Indian country within the State, except the Warm Springs Reservation. |
| Wisconsin | All Indian country within the State. |

(b) Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian

2

tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; or shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property or any interest therein.

(c) Any tribal ordinance or custom heretofore or hereafter adopted by an Indian tribe, band, or community in the exercise of any authority which it may possess shall, if not inconsistent with any applicable civil law of the State, be given full force and effect in the determination of civil causes of action pursuant to this section.

## 25 U.S.C. § 1321. Assumption by State of criminal jurisdiction

(a) Consent of United States-
    **(1) IN GENERAL-** The consent of the United States is hereby given to any State not having jurisdiction over criminal offenses committed by or against Indians in the areas of Indian country situated within such State to assume, with the consent of the Indian tribe occupying the particular Indian country or part thereof which could be affected by such assumption, such measure of jurisdiction over any or all of such offenses committed within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over any such offense committed elsewhere within the State, and the criminal laws of such State shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State.
    **(2) CONCURRENT JURISDICTION- At the request of an Indian tribe, and after consultation with and consent by the Attorney General, the United States shall accept concurrent jurisdiction to prosecute violations of sections 1152 and 1153 of title 18, United States Code, within the Indian country of the Indian tribe.**

(b) *Alienation, encumbrance, taxation, and use of property; hunting, trapping, or fishing*
Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; or shall deprive any Indian or any Indian tribe, band, or community of any right, privilege, or immunity afforded under Federal treaty, agreement, or statute with respect to hunting, trapping, or fishing or the control, licensing, or regulation thereof.

## 25 U.S.C. § 1322. Assumption by State of civil jurisdiction

(a) *Consent of United States; force and effect of civil laws*
The consent of the United States is hereby given to any State not having jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the

3

areas of Indian country situated within such State to assume, with the consent of the tribe
occupying the particular Indian country or part thereof which would be affected by such
assumption, such measure of jurisdiction over any or all such civil causes of action
arising within such Indian country or any part thereof as may be determined by such State
to the same extent that such State has jurisdiction over other civil causes of action, and
those civil laws of such State that are of general application to private persons or private
property shall have the same force and effect within such Indian country or part thereof
as they have elsewhere within that State.

(b) *Alienation, encumbrance, taxation, use, and probate of property*
Nothing in this section shall authorize the alienation, encumbrance, or taxation of any
real or personal property, including water rights, belonging to any Indian or any Indian
tribe, band, or community that is held in trust by the United States or is subject to a
restriction against alienation imposed by the United States; or shall authorize regulation
of the use of such property in a manner inconsistent with any Federal treaty, agreement,
or statute, or with any regulation made pursuant thereto; or shall confer jurisdiction upon
the State to adjudicate, in probate proceedings or otherwise, the ownership or right to
possession of such property or any interest therein.

(c) *Force and effect of tribal ordinances or customs*
Any tribal ordinance or custom heretofore or hereafter adopted by an Indian tribe, band,
or community in the exercise of any authority which it may possess shall, if not
inconsistent with any applicable civil law of the State, be given full force and effect in the
determination of civil causes of action pursuant to this section.

## 25 U.S.C. § 1323. Retrocession of jurisdiction by State

(a) *Acceptance by United States*
The United States is authorized to accept a retrocession by any State of all or any
measure of the criminal or civil jurisdiction, or both, acquired by such State pursuant to
the provisions of section 1162 of title 18, section 1360 of title 28, or section 7 of the Act
of August 15, 1953 (67 Stat. 588), as it was in effect prior to its repeal by subsection (b)
of this section.

(b) *Repeal of statutory provisions*
Section 7 of the Act of August 15, 1953 (67 Stat. 588), is hereby repealed, but such
repeal shall not affect any cession of jurisdiction made pursuant to such section prior to
its repeal.

## 25 U.S.C. § 1324. Amendment of State constitutions or statutes to remove legal impediment; effective date

Notwithstanding the provisions of any enabling Act for the admission of a State, the
consent of the United States is hereby given to the people of any State to amend, where
necessary, their State constitution or existing statutes, as the case may be, to remove any
legal impediment to the assumption of civil or criminal jurisdiction in accordance with

4

the provisions of this subchapter. The provisions of this subchapter shall not become effective with respect to such assumption of jurisdiction by any such State until the people thereof have appropriately amended their State constitution or statutes, as the case may be.

25 U.S.C. § 1325. Abatement of actions

(a) *Pending actions or proceedings; effect of cession*
No action or proceeding pending before any court or agency of the United States immediately prior to any cession of jurisdiction by the United States pursuant to this subchapter shall abate by reason of that cession. For the purposes of any such action or proceeding, such cession shall take effect on the day following the date of final determination of such action or proceeding.

(b) *Criminal actions; effect of cession*
No cession made by the United States under this subchapter shall deprive any court of the United States of jurisdiction to hear, determine, render judgment, or impose sentence in any criminal action instituted against any person for any offense committed before the effective date of such cession, if the offense charged in such action was cognizable under any law of the United States at the time of the commission of such offense. For the purposes of any such criminal action, such cession shall take effect on the day following the date of final determination of such action.

25 U.S.C. § 1326. Special election

State jurisdiction acquired pursuant to this subchapter with respect to criminal offenses or civil causes of action, or with respect to both, shall be applicable in Indian country only where the enrolled Indians within the affected area of such Indian country accept such jurisdiction by a majority vote of the adult Indians voting at a special election held for that purpose. The Secretary of the Interior shall call such special election under such rules and regulations as he may prescribe, when requested to do so by the tribal council or other governing body, or by 20 per centum of such enrolled adults.

## CERTIFICATION OF SERVICE

This is to certify  true and correct copy of **DEFENDANT GARDNER AND KOZLOWICZ MOTION FOR SUPPLEMENTAL ON RETALIATION FROM UTE TRIBE**, foregoing document was delivered by mail, first class, postage prepaid and addressed as follows on this ___24___, day of July, 2012.

Jesse C. Trentadue
SUITTER AXLAND, PLLC
8 East Broadway, Suite 200
Salt Lake City, Utah 84111

United States Secretary of
the Interior, Kenneth Salazar,
1849 C Street, NW
Washington, DC 20240

Ute Indian Tribe
Ute Tribal Business Committee
and Ute Tribal Executive Director
P.O. Box 190
Fort Duchesne, Utah 84026

Lynda Kozlowicz, Attorney Pro-Se.

1