Edson Gardner, Attorney Pro-Se,
Uintah Indian Descendant.
Post Office Box 472
Fort Duchesne, Utah 84026
Telephone; (423) 722-8224 or 722-6707

FILED
U.S. DISTRICT COURT

2012 SEP -5 ₽ 12: 13

DISTRICT OF UTAH

IN THE UNITED STATES DISTRICT COURT FOR

BY
DEPUTY CLERK

THE DISTRICT OF UTAH CENTRAL DIVISION

Honorable Clair M. Poulson,
Judge of the Duchesne County
Justice Court, and Derek
Dalton,

            Plaintiff(s),

v.

Ute Indian Tribe of the
Uintah and Ouray Reservation,
Business Committee for the Ute
Tribe of the Uintah and Ouray
Reservation, Tribal Court for
the Ute Tribe of the Uintah and
Ouray Reservation, Irene C. Cuch,
in her official capacity as Chairwoman
of the Business Committee for the
Ute Tribe, Ronald J. Wopsock, in
his official capacity as vice-
chairman of the Business Committee
for the Ute Tribe, Frances Poowewgup,
in her official capacity as a Member
of the Business for the Ute Tribe,
Stuart Pike, Sr., in his official
capacity as a Member of the for the
Ute Tribe, Richard Jenks, Jr., in his
official capacity as a Member of the
Business for the Ute Tribe, Phillip
Chimburas, in his official capacity
as a Member of the Business for the
Ute Tribe, Honorable Smiley Arrowchis,
in his official capacity as Chief Judge
of the Ute Trial Court, Dean Reed, and
Lynda Kozlowicz, Edson Gardner, Kozlowicz

Civil No. 212-CV-00497

DEFENDANT GARDNER'S MEMORANDUM
FOR PRELIMINARY INJUNCTION
AND TEMPORARY RESTRAINING ORDER

Judge, Brooke C. Wells

1

& Gardner Advocate, Inc., a Ute Tribe
Business License, and Athenya Swain,

              Defendant(s),

Defendant, Edson Gardner, Uintah Indian Descendant,
Attorney Pro-Se, submits Memorandum For Preliminary Injunction
And Temporary Resstraining Order, as follows;

      1.   Jurisdiction of Defendant Gardner Uintah Indian
Descendants federal claims exists pursuant to 28 U.S.C. 1331,
the claims arise under and seek to preserve rights and
immunities secured by, Indian Commerce Clause, Art. I, Sec. 8.
of United States Constitution, and Indian Country, 18 U.S.C.
1151, and Non-Intercourse Act, 25 usc 177. This violation of
federal law, Article I, Sec. 8, of United States Constitution
reposes authority over commerce with Indians in Congress of
United States. Authority as exclusive, pre-empts authority of
State of Utah and their Plaintiffs Duchesne and Uintah County,
political subdivision to extinguish aboriginal title to
Defendant Gardner Uintah Indian Descendants to Uintah Indian
Reservation lands.

      2.  Defendant Gardner Uintah Indian Descendant brings
this action against Plaintiffs Duchesne and Uintah County to
stop Counties from attempting to foreclose on, convey and
remove Uintah Indian's lands which it possesses over Plaintiff

Duchesne and with Uintah County. The County's efforts violate
federal law regarding restraints on alienation of lands in
Uintah and Ouray Indian Reservation and sovereign immunity of
Defendant Gardner Uintah Indian Descendant themselves.
Plaintiff Duchesne and Uintah County's efforts violates
provisions of federal law which exempted Defendant Gardner
Uintah Indian Descendant's property from State Taxation if
located in an Indian reserve owned properties are located in
Uintah reservation as acknowledged by, Ute Indian Tribe of the
Uintah and Ouray Reservation v. State of Utah, 114 F 3d 1513
(10th Cir. 1997)(Ute V.). Prohibition on foreclosure on lands
owned by sovereign Indians been expressly recognized by
decisions and rendered. The cases filed in 10th Cir. Court of
Appeals (Ute V.), as intitially affected by decision in 1997
remains good law and bars Plaintiff Duchesne and Uintah County
to foreclosure actions as to Defendant Gardner Uintah Indian
Descendants owned properties located in Uintah Reservation.

    3.    Plaintiff Duchesne and Uintah County of State of
Utah condemination of land as of Seneca Nation was held to
violate Indian Country, 18 U.S.C. 1151, and held the Non-
Intercourse Act, 25 U.S.C.177, retained federal common law
rights to sue on claim, and right was not barred by
limitations or laches. Defendant Gardner Uintah Indian

3

Descendants Taxation occured in Indian Country under 18 U.S.C.
1151. The Ute Tribe and federal government have taxation
jurisdiction over Indian Country in which Tenth Cir. Court of
Appeals recognized and established as matter of federal law in
Uintah Reservation for Gardner Uintah Indian Deescendants,
within Duchesne and Uintah County Utah. This action presents
question whether Duchesne County and Uintah County may
foreclose on real property owned by Indians in Utah (Defendant
Gardner Uintah Indian Descendant), for failure to pay and
valorem property taxes. The United States District Court, W.
D. New York, Cayuga Indian Nation of New York v. Seneca County
of New York, Case No. 11-CV-6004 CJS, August 20, 2012
(**attached herein**). Now before this Court is Defendant's
application for preliminary injunctive relief, enjoining
Plaintiff Duchesne and Uintah from foreclosing on subject
parcels on grounds of Defendant Gardner Uintah Indian
Descendants sovereign immunity for reasons on following
application was granted.

    4.   Defendant Gardner Uintah Indian Descendant seeks
declaratory and injunctive relief from this court pursuant to
All Writs Act, 28 U.S.C. 1651(a), and All Writs Act
injunctions are governed by same traditional criteria that
govern injunctions generally, and Fed. R. Civ. P. 65(a)

enjoining Plaintiffs Duchesne and Uintah County from further efforts to maintain or effectuate pending foreclosure proceeding on Uintah Indian Descendants owned properties in Indian Country, 18 U.S.C. 1151. Defendant Gardner Uintah Indian Descendant owned proprreties constitute Uintah reservation land and, therefore, Non-Intercourse Act, 25 U.S.C. 177. within meaning. Defendant Gardner Uintah Indian Descendants properties are subject to restriction on alienation and encumbrance by virtue of federal law

5. Plaintiff Duchesne and Uintah County state of Utah sovereign immunity from action, it is clear, action may not proceed in admirealty against ship in state's possession. (discussing cases and distinguishing scenario where ship is not in state's possession). When property owner is federal government, it is well-settled sovereign immunity from action bars state from foreclosing for non-payment of taxes, regarding of whether tax immunity applies.

6. Whether or not Defendant Gardner Uintah Indian Descendants owned properties identifed as taxable, they are subject to restrictions against alienation imposed by Non-Intercourse Act, 25 U.S.C. 177, provides no purchase, grant, lease or other conveyance of lands, or of any title or claim thereto from any Indian nation or tribe of Indians shall be of

any validity in law or equity unless same be made by treaty or
convention entered into pursuant to U.S. Constitution.
Plaintiffs Duchesne and Uintah County has not complied with
provisions of Act, for federal involvement in and approval of
conveyance of an interest in Defendant Gardner Uintah Indian
Descendants owned properties, and violate Article I, Sec. 8,
of the United States Constitution and federal common law,
which give exclusive authority to Congress with respect to
extinguishment of aboriginal title to Indian lands, to
regulate commerce with foreign nations, and among several
states, and with Indian tribes, and violates of Indian
Country, 18 U.S.C. 1151. and Non-Intercourse Act, 25 U.S.C.
177, and violates 42 U.S.C. 1983, under color of state law.
They deprive Indians of rights, privileges and immunities
secured by United States Consittution and by laws of the
United States.

7.   Plaintiff Duchesne and Uintah County has no right to
acquire, convey, foreclose on, sell or transfer title to
Defendant Gardner Uintah Indian Descendants owned property
within Uintah Reservation by Plaintiff Duchesne and Uintah
County, and Plaintiff Duchesne and Uintah County's effort to
do so are null and void under federal law.

6

**WHEREFORE,** Prayer for relief, Defendant Gardner Uintah Indian Descendant of Utah respectfully requests this Court award Defendant;

1. A declaration; Defendant Duchesne and Uintah County may not foreclose on, acquired, convey, sell or transfer title to Defendant Gardner Uintah Indian Descendants owned properties by Plaintiffs Duchesne and Uintah County based on annexed Tax Enforcement Notification and Notice of Foreclosure and all of efforts of Plaintiff Duchesne and Uintah County to do so and to interfere with Defendant Gardner Uintah Indian Descendants ownership, possession and to occupancies of such lands are null and voids;

2. An injunction; prohibiting Duchesne and Uintah County, its officers, agents, servent, employees and persons in active concert or participation with them from any further efforts to effectuate, maintain or complete foreclosure, acquisition, conveyance, maintain or complete foreclosure, acquisition, conveyance or sale of, or transfer of title to, Defendant Gardner Uintah Indian Descendants properties by Plaintiff Duchesne and Uintah County, and from interfering in any way with Defendant Gardner Uintah Indian Descendants ownership, possession, and occupancy of such Uintah Indian reservation lands

3.   Mandating Plaintiff Duchesne and Uintah County, its officers, agents, servent, employees and person to active concert or participation with them void and rescind all acts taken to acquire, convey, foreclose, sell or transfer title to Defendant Gardner Uintah Indian Descendants owned properties within Uintah Indian Reservation by Plaintiff Duchesne and Uintah County to date, including annexed Tax Enforcement Notification and Nation of Foreclosure.

Respectfully submitted this day ___4___ of September, 2012.

Edson Gardner, Attorney Pro-Se,
Uintah Indian Descendant.

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CAYUGA INDIAN NATION OF NEW YORK,

Plaintiff,

-v-

DECISION AND ORDER

SENECA COUNTY, NEW YORK,

11-CV-6004 CJS

Defendant.

APPEARANCES

For Plaintiff:                      Daniel J. French, Esq.
                                    Lee Alcott, Esq.
                                    French-Alcott, PLLC
                                    300 South State Street
                                    Syracuse, New York 13202

For Defendant:                      Phillip G. Spellane, Esq.
                                    Harris Beach PLLC
                                    99 Garnsey Road
                                    Pittsford, New York 14534

INTRODUCTION

This action presents the question whether Seneca County ("Defendant") may foreclose on real property owned by the Cayuga Indian Nation of New York ("Plaintiff") for failure to pay *ad valorem* property taxes. Now before the Court is Plaintiff's application for preliminary injunctive relief, enjoining Defendant from foreclosing on the subject parcels, on the grounds of tribal sovereign immunity. (Docket No. 4). For the reasons that follow, the application is granted.

## BACKGROUND

Plaintiff is a federally-recognized Indian Tribe which owns real property in Seneca County. The subject dispute involves land that was formerly part of the 64,000-acre Cayuga Reservation acknowledged by the Treaty of Canandaigua in 1794. Shortly after 1794, the Cayuga Nation sold large portions of the Reservation lands to the State of New York. Plaintiff maintains that such sales were illegal and void *ab initio*, since they did not comply with the requirements of the Non-Intercourse Act, 25 U.S.C. § 177. Plaintiff contends, therefore, that the entire 64,000-acre Cayuga Reservation remains intact to this day. Amended Complaint [#9] at ¶ 10. Defendant disagrees.

Approximately two centuries after selling off the Reservation land to the State of New York, Plaintiff began purchasing parcels of property on the open market that lie within the geographic area of the aforementioned Reservation. Plaintiff contends that such properties are now Reservation land and are "Indian Country" within the meaning of federal law. *See*, Amended Complaint [#9] at ¶ ¶ 7-10. Defendant again disagrees.

The subject action involves five[1] such parcels of property located in Seneca County, which were originally included in the Reservation, but which were later sold to third parties, and then re-purchased by Plaintiff. Defendant has attempted to collect *ad valorem* property taxes on the parcels, and Plaintiff has denied any obligation to pay them. As a result, Defendant initiated foreclosure proceedings, pursuant to Article Eleven of the New York State Real Property Tax Law.

---

[1]The Amended Complaint indicates that there are five parcels. Amended Complaint [#9] at ¶ 7. However, an affidavit submitted by Plaintiff's counsel indicates that there are four properties. Alcott Aff. [#6] at ¶ 3.

2

On January 5, 2011, Plaintiff commenced this action, seeking permanent declaratory and injunctive relief. At the same time, Plaintiff made the subject application for preliminary injunctive relief, enjoining the County from foreclosing on the properties. Plaintiff contends that it is entitled to injunctive relief because the foreclosure actions are barred by sovereign immunity. Specifically, Plaintiff contends that "[a]s a federally-recognized Indian nation, [it] possess[es] tribal sovereign immunity [from suit], which bars administrative and judicial proceedings against the [Indian] Nation," even if the taxes are properly owed.[2] In that regard, Plaintiff relies, in large part, on the Second Circuit's decision in *Oneida Indian Nation of New York v. Madison County and Oneida County*, 605 F.3d 149 (2d Cir. 2010) ("*Oneida*").

The Court granted Plaintiff's request for an expedited hearing, and scheduled the matter to be heard on January 13, 2011. However, the parties agreed to stay the foreclosure proceedings, and stipulated to a briefing schedule, thereby mooting the request for an expedited hearing.

On February 3, 2011, Defendant filed opposing papers. Defendant observes that after Plaintiff's application was filed, the U.S. Supreme Court vacated and remanded the Second Circuit's *Oneida* decision, and argues that such decision now "has no precedential value whatsoever." Spellane Aff. [#12-1] at 2. Defendant contends, *inter alia*, that the

---

[2] Plaintiff maintains that in this action it is not claiming that the property is "immune from taxation." Pl. Reply Memo [#21] at 1 ("The Nation does not claim the parcels at issue here are immune from taxation as a matter of *federal* law.") (emphasis added). Instead, Plaintiff contends that while the County may impose taxes, it has no right to collect them. *Id*. ("It is well-established that, even where there is no immunity from taxation, sovereign immunity from suit may bar a state from resorting to a judicial remedy to enforce its tax."). Although, Plaintiff's Amended Complaint indicates that under New York State law, "an Indian tribe's property [is exempt] *from taxation* if located within an Indian reservation." Amended Complaint [#9] at ¶ 1 (emphasis added); *see also*, *id*. at ¶ 21 (citing New York Real Property Tax Law § 454).

Second Circuit's opinion was incorrectly decided in any event, since it was contrary to Supreme Court precedent, most notably *County of Yakima v. Confederated Tribes and Bands of the Yakima Indian Nation*, 502 U.S. 251, 112 S.Ct. 683 (1992) ("*Yakima*") and and *City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197, 125 S.Ct. 1478 (2005) ("*Sherrill*"). According to Defendant, *Yakima* established that tribal sovereign immunity does not bar *in rem* property tax foreclosure proceedings against property owned by an Indian tribe, while *Sherrill* held that an Indian tribe cannot revive its sovereign authority over land by purchasing it after years of inaction.[3]

On May 5, 2011, counsel for the parties appeared before the undersigned for oral argument.

## DISCUSSION

Plaintiff seeks an injunction enjoining the state-court tax foreclosure proceeding, pursuant to the All-Writs Act, 28 U.S.C. § 1651(a) (Providing that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."); *see also*, 28 U.S.C. § 2283 (A federal court may grant an injunction to stay state court proceedings "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."). The parties dispute whether tribal sovereign immunity applies, and therefore disagree as to whether the Court should enjoin the state

---

[3]Defendant also maintains that the subject foreclosure actions are not barred by the Indian Trade and Intercourse Act of 1834, also known as the Non-Intercourse Act. Plaintiff had argued, in its moving papers, that the foreclosure actions violated the Non-Intercourse Act, which prompted Defendant to devote a large part of its responding brief to that issue. See, Def. Memo of Law [#12] at pp. 19-33. However, Plaintiff's reply brief disclaims reliance on the Non-Intercourse Act as a basis for the subject motion. See, Pl. Reply Memo of Law [#21] at p. 2, n. 2 (Indicating that tribal sovereign immunity provides a sufficient basis for granting the motion, without regard to the Non-Intercourse Act). Accordingly, the Court need not address the Non-Intercourse Act at this time.

4

court proceedings.

A lengthy discussion is unnecessary, since, according to the Second Circuit's *Oneida* decision, Supreme Court precedent clearly determines the outcome of this motion, and holds as follows: Even assuming that Seneca County has the right to impose property taxes on the subject parcels owned by the Cayuga Indian Nation, it does not have the right to collect those taxes by suing to foreclose on the properties, unless Congress authorizes it to do so, or unless the Cayuga Indian Nation waives its sovereign immunity from suit. Congress has not authorized Seneca County to sue the Cayugas, and the Cayugas have not waived their sovereign immunity. Consequently, the Cayugas' motion for an order enjoining the foreclosure actions must be granted.

The cases upon which the foregoing paragraph rests are well-known to the litigants and to the courts that will undoubtedly be called upon to review this Court's ruling. For the benefit of anyone reading this decision who is not familiar with them, and who may be understandably perplexed by this ruling, the Court will briefly review the controlling law.

In *Kiowa Tribe of Oklahoma v. Manufacturing Tech., Inc.*, 523 U.S. 751, 118 S.Ct. 1700, 1702 (1998), the Supreme Court reaffirmed the federal common law doctrine that Indian tribes cannot be sued unless Congress authorizes the suit or unless the tribes waive their immunity. Significantly, the Supreme Court held that even if a state has the authority to tax or otherwise regulate an Indian tribe in a particular instance, it does not have the ability to sue the tribe to enforce the tax or regulation, unless Congress authorizes the suit, or unless the tribe waives its sovereign immunity:

> As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity. . . .

> Our cases allowing States to apply their substantive laws to tribal activities
> are not to the contrary. We have recognized that a State may have authority
> to tax or regulate tribal activities occurring within the State but outside Indian
> country. To say substantive state laws apply to off-reservation conduct,
> however, is not to say that a tribe no longer enjoys immunity from suit. In
> [*Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*,
> 498 U.S. 505, 111 S.Ct. 905 (1991)], for example, we reaffirmed that while
> Oklahoma may tax cigarette sales by a Tribe's store to nonmembers, the
> Tribe enjoys immunity from a suit to collect unpaid state taxes. *There is a
> difference between the right to demand compliance with state laws and the
> means available to enforce them.*

*Id.*, 118 S.Ct. at 1702-1703 (emphasis added, citations omitted). In doing so, the Supreme

Court questioned "the wisdom of perpetuating the doctrine" of Tribal sovereign immunity,

but deferred to Congress to make any changes in that regard. *Id.*, 118 S.Ct. at 1704-1705

("The capacity of the Legislative Branch to address the issue by comprehensive legislation

counsels some caution by us in this area. . . . [W]e decline to revisit our case law and

choose to defer to Congress."). To date, Congress has declined that invitation.

In *Sherrill*, the Supreme Court rejected the Oneida Indian Nation's claim to have

sovereign authority, in the form of exemption from property taxation, over real property

which had been part of the Oneida's reservation, but which had been sold, and then re-

purchased by the Oneidas on the open market:

> In this action, [the Oneida Indian Nation] seeks declaratory and injunctive
> relief recognizing its present and future sovereign immunity from local
> taxation on parcels of land the Tribe purchased in the open market,
> properties that had been subject to state and local taxation for generations.
> We now reject th[at] unification theory . . . and hold that standards of federal
> Indian law and federal equity practice preclude the Tribe from rekindling

6

embers of sovereignty that long ago grew cold.[4]

*Id.*, 125 S.Ct. at 1489-1490. Although the Supreme Court held that the Oneidas' property was subject to taxation, as well as to "local zoning or other regulatory controls," it did not explicitly hold that the City of Sherrill could sue the Oneidas to collect unpaid taxes.

Approximately five years later, in *Oneida*, the Second Circuit addressed a dispute that flowed from the Supreme Court's decision in *Sherrill*. Specifically, in the wake of *Sherrill*'s holding that the property recently purchased by the Oneidas was subject to taxation, Madison County and Oneida County attempted to collect unpaid taxes from the Oneidas, by foreclosing on the properties. The Oneidas responded by seeking an injunction in federal district court, enjoining the foreclosure actions, on the grounds of tribal sovereign immunity from suit. The district court granted summary judgment on that basis for the Oneidas, and the Second Circuit Panel affirmed that ruling, stating: "We affirm on the ground that the [Oneida Indian Nation] is immune from suit under the long-standing doctrine of tribal sovereign immunity. The remedy of foreclosure is therefore not available to the Counties." *Id.*, 605 F.3d at 151.

In that regard, the Second Circuit discussed the difference between "two distinct doctrines: tribal sovereign authority over reservation lands and tribal sovereign immunity from suit." *Oneida*, 605 F.3d at 156. The Court specifically stated that *Sherrill* involved only the former doctrine, and not the latter. That is, the Circuit Panel held that *Sherrill* merely authorized the imposition of taxes on the Oneida's properties, but did not authorize the

---

[4]The Supreme Court observed, however, that the Oneidas could seek to have the land taken into federal trust, and thus exempted from State and local taxation, pursuant to 25 U.S.C. § 465. *Id.*, 125 S.Ct. at 1495 ("Section 465 provides the proper avenue for [the Oneidas] to reestablish sovereign authority over territory last held by the Oneidas 200 years ago.").

7

taxing counties to take legal action to collect the taxes:

> [W]e do not read *Sherrill* as implicitly abrogating the [Oneidas'] immunity from suit. No such statement of abrogation was made by the *Sherrill* Court, nor does the opinion call into question the *Kiowa* Court's approach, that any such abrogation should be left to Congress. *Sherrill* dealt with the right to demand compliance with state laws. It did not address the means available to enforce those laws.

*Id.* at 157-159 (citations and internal quotation marks omitted). Although the Second Circuit Panel agreed with the Counties, "that the notion that they may tax but not foreclose is inconsistent and contradictory," it nevertheless concluded that the foreclosure actions had to be enjoined, since Congress had not authorized them, and since the Oneidas had not waived their sovereign immunity. *Id.* at 159.

In a concurring opinion in *Oneida*, Judge Cabranes removed any possible doubt as to the meaning of the Panel's decision:

> The holding in this case comes down to this: an Indian tribe can purchase land (including land that was never part of a reservation); refuse to pay lawfully-owed taxes; and suffer no consequences because the taxing authority cannot sue to collect the taxes owed. This rule of decision defies common sense. But absent action by our highest Court, or by Congress, it is the law.

*Id.* at 163 (footnote omitted); *see also, id.* at 164 (Indicating that the Panel's ruling was required by "unambiguous guidance from the Supreme Court," but calling upon the Supreme Court, or Congress, to correct the "anomalous" result and "reunite" "law and logic.").

The county defendants in *Oneida* petitioned for writ of certiorari, and the Supreme Court agreed to hear the appeal. However, in an eleventh-hour tactical move, the Oneidas

avoided review by belatedly agreeing to waive sovereign immunity. Consequently, the

Supreme Court vacated and remanded the action to the Second Circuit for further action

in light of the Oneidas' waiver. See, *Madison County, N.Y. v. Oneida Indian Nation of New*

*York,* 131 S.Ct. 704 (2011) (Mem). On remand, the Second Circuit affirmed the district

court's decision in part, reversed in part, vacated in part, and remanded with instructions,

on grounds unrelated to the issue of sovereign immunity from suit. *Oneida Indian Nation*

*of New York v. Madison County,* 665 F.3d 408 (2d Cir. 2011).

Against the backdrop of these cases, Defendant maintains that it is entitled to

foreclose on the Cayugas' properties, and asks this Court to issue a ruling that is directly

contrary to the Second Circuit's ruling in *Oneida.* Defendant maintains that the *Oneida*

decision has no force, since it was vacated by the Supreme Court. However, the Court

disagrees. Although the Supreme Court vacated the Second Circuit's ruling, it did not do

so on the merits, and there is no reason to believe that the Second Circuit would reach a

different decision today. To the contrary, Judges Cabranes' concurring opinion, which

Judge Hall joined, indicated that the Panel's ruling was necessitated by "unambiguous

guidance from the Supreme Court," which has not changed.

Defendant nevertheless insists that *Oneida* was wrongly decided. According to

Defendant, *Sherrill* necessarily held that the Oneidas could not invoke sovereign immunity

from suit to avoid the *collection* of the disputed property taxes. On this point, in *Sherrill,*

the Supreme Court stated:

> [G]iven the longstanding, distinctly non-Indian character of the area and its
> inhabitants, the regulatory authority constantly exercised by New York State
> and its counties and towns, and the Oneida's long delay in seeking judicial
> relief against parties other than the United States, we hold that the Tribe

9

cannot unilaterally revive its ancient sovereignty, <u>in whole or in part</u>, over the
parcels at issue.

*Sherrill*, 125 S.Ct. at 1483 (emphasis added). Defendant argues that pursuant to *Sherrill*,
an Indian tribe that purchases real property that may have previously been Reservation
land is treated no differently than any non-Indian land owner with regard to that property.

At least one district court in this Circuit has agreed with Defendant on this point. In
*New York v. Shinnecock Indian Nation*, 523 F.Supp.2d 185, 298 (E.D.N.Y. 2007), which
did not involve property taxes, the district court interpreted *Sherrill* as permitting a lawsuit
against the Oneidas to collect the unpaid taxes:

> [I]t is clear from the Supreme Court's decision in *Sherrill* that a tribe can be
> prevented from invoking a defense of sovereign immunity where equitable
> doctrines preclude the tribe from asserting sovereignty over a particular
> parcel of land. <u>In other words, the *Sherrill* Court held that the [Oneidas] could</u>
> <u>not invoke sovereign immunity to defend against local real property tax</u>
> <u>enforcement proceedings, including eviction proceedings.</u> 544 U.S. at 211,
> 125 S.Ct. 1478. Specifically, . . . Justice Stevens argued in his dissent that
> tribal immunity could be raised "as a defense against a state collection
> proceeding." *Id.* at 225, 125 S.Ct. 1478. However, the majority
> opinion specifically rejected that reasoning. *See id.* at 214 n. 7, 125 S.Ct. 1478 ("The
> dissent suggests that, compatibly with today's decision, the Tribe may assert
> tax immunity defensively in the eviction proceeding against Sherrill. We
> disagree."); *see also id.* at 221, 125 S.Ct. 1478 (Souter, J., concurring)
> (rejecting claim of territorial sovereign status whether affirmative or
> defensive). Thus, <u>*Sherrill* allows a tribe to be sued by a state or town, such</u>
> <u>as the instant case, to enforce its laws with respect to a parcel of land if</u>
> <u>equitable principles prevent the tribe from asserting sovereignty with respect</u>
> <u>to that land.</u> To hold otherwise would completely undermine the holding of
> *Sherrill* because, if defendants are immune from suit, plaintiffs here would be
> left utterly powerless to utilize the courts to avoid the disruptive impact that
> the Supreme Court clearly stated they have the equitable right to prevent.

(emphasis added). However, the Second Circuit subsequently vacated the district court's

10

decision in *Shinnecock* for lack of subject matter jurisdiction, without addressing the merits

of the ruling. *See, New York v. Shinnecock Indian Nation*, 686 F.3d 133 (2d Cir. Jun. 25,

2012).

The New York Court of Appeals has also seemingly interpreted *Sherrill* as permitting

lawsuits against the Oneidas, and, by extension, the Cayugas, to collect property taxes on

properties that were recently bought on the open market. In that regard, in *Cayuga Indian*

*Nation v. Gould*, 14 N.Y.3d 614, 640, 642-643, 930 N.E.2d 233 (2010), the Court of

Appeals made the following observation about the *Sherrill* decision:

> In *City of Sherrill*, the Supreme Court applied the doctrines of laches,
> acquiescence and impossibility to bar a claim by the Oneida Indian Nation
> that its repurchase of aboriginal lands resulted in the reassertion of that
> tribe's sovereign authority relieving the tribe of the obligation <u>to pay real</u>
> <u>property taxes</u> on the reacquired parcels.
>
> ***
>
> *City of Sherrill* certainly would preclude the Cayuga Nation from attempting
> to assert <u>sovereign power</u> over its convenience store properties for the
> purpose of avoiding real property taxes[.]

(emphasis added).

Consequently, if this Court were writing without the benefit of guidance from the

Second Circuit, it might well have been inclined to agree that *Sherrill's* broad language bars

the Cayugas from asserting <u>any</u> sovereign authority involving the recently-purchased

parcels, including sovereign immunity from suit. *See, Sherrill*, 125 S.Ct. at 1483 ("[T]he

tribe cannot unilaterally revive its ancient sovereignty, in whole or in part, over the parcels

at issue."). On this point, the Court finds one of Plaintiff's statements at oral argument to

be particularly interesting. Specifically, Plaintiff's counsel indicated that the Tribe does not

11

claim to have sovereign immunity against tax foreclosure proceedings on all real property

that it owns, regardless of location, but instead, only claims such immunity with regard to

its property within the geographic boundary of the Cayuga Reservation as established by

the Treaty of Canandaigua.   In other words, Plaintiff maintains that it has sovereign

immunity from suit as to foreclosure actions against properties within the Reservation,

which it maintains has never been disestablished, but not as to properties outside the

Reservation.[5]  This argument seems to admit that the Cayugas' ability to claim sovereign

immunity from suit is inherently tied to its ability to exercise at least some amount of

sovereign authority over the land.   This position, though, does not appear helpful to

Plaintiff,  since, according to *Sherrill,* the Cayugas cannot assert any sovereign authority

over the recently-purchased land, "in whole or in part," due to equitable considerations,

even though it may lie within the Reservation.

Accordingly, there is some persuasive force to Defendant's argument that Plaintiff

cannot assert sovereign immunity from suit involving the subject properties, based upon

the same practical and equitable considerations that drove the *Sherrill* decision.  However,

for the reasons stated above, the Court will follow the Second Circuit's ruling in *Oneida,*

which, although technically without effect after being vacated, clearly rejects Defendant's

argument.

---

[5]On this point, Plaintiff curiously seems to claim less sovereign immunity from suit than it could have, pursuant to *Oneida,* since in that case, the Second Circuit indicated that sovereign immunity from suit applied even to foreclosure actions involving property that was never part of an Indian reservation. See, Oneida, 605 F.3d at 163 ("[A]n Indian tribe can purchase land (*including land that was never part of a reservation*); refuse to pay lawfully-owed taxes; and suffer no consequences because the taxing authority cannot sue to collect the taxes owed.") (emphasis added) (Cabranes, J., concurring opinion).  Plaintiff 's position also seems inconsistent with the statement in *Oneida* that the doctrines of tribal sovereign authority over tribal land and sovereign immunity from suit are entirely distinct.

12

Defendant nevertheless argues that the Second Circuit's *Oneida* decision is erroneous because it failed to consider that the subject foreclosure actions are *in rem* proceedings, to which, Defendant argues, tribal sovereign immunity from suit does not apply. However, in the district court decision that was on appeal in *Oneida*, Judge Hurd expressly rejected the same argument by Madison County, that tribal sovereign immunity from suit did not apply to *in rem* foreclosure actions: "The County cannot circumvent Tribal sovereign immunity by characterizing the suit as *in rem*, when it is, in actuality, a suit to take the tribe's property." *Oneida Indian Nation of New York v. Madison County*, 401 F.Supp.2d 219, 229 (N.D.N.Y. 2005). On appeal to the Second Circuit, the county defendants again argued that the Oneidas' tribal immunity from suit did not apply in an *in rem* tax foreclosure proceeding. *See*, Brief and Special Appendix for Defendants-Counterclaimants-Appellants, 2007 WL 6432637 at pp. 58 ("*Yakima* and other cases make it clear that any sovereignty possessed by a tribe *qua* tribe is irrelevant in an *in rem* tax foreclosure proceeding.") & 60 ("It is clear from *Sherrill* and *Yakima* that different standards govern Indian claims of sovereign immunity, depending on whether there is a claim against the tribe itself, or a claim against land owned by the tribe that is not sovereign Indian country. This central distinction is rooted in the limited nature of an *in rem* action, which looks only to the property for relief.") (footnote omitted).

As already discussed, though, the Second Circuit disagreed with the Counties' arguments, and specifically found that the foreclosure actions were barred by the doctrine of tribal sovereign immunity from suit. *See*, *Oneida Indian Nation of New York v. Madison County and Oneida County*, 605 F.3d 149 (2d Cir. 2010). Although the Panel did not

13

discuss Defendant's argument about *in rem* proceedings in the decision, it obviously considered and rejected it. Accordingly, the Court need not revisit that issue.

To the extent that Defendant's argument on this point relies upon the Supreme Court's decision in *County of Yakima v. Confederated Tribes & Bands of the Yakima Indian Nation*, 502 U.S. 251, 112 S.Ct 683 (1992), the Court disagrees that the case stands for the proposition that tribal sovereign immunity from suit is inapplicable to *in rem* proceedings. *Yakima* involved the State of Washington's ability to tax certain "fee patent" parcels of land, located within the Yakima Reservation, that had become alienable under the General Allotment Act. *Yakima*'s use of the terms *in rem* and *in personam* pertained to the difference between the *imposition*, not collection, of taxes on a piece of land, as opposed to an individual. The Supreme Court concluded that Yakima County had the power to impose an ad valorem tax on the land, pursuant to an express grant from Congress, but not the ability to impose an excise tax on sellers of the land. Admittedly, the *Yakima* decision did refer in passing to the "power to assess *and collect* a tax on certain real estate." *Id.*, 112 S.Ct. at 692 (emphasis added). However, that statement appears to be dicta, since the *Yakima* decision did not involve tribal sovereign immunity from suit.

Defendant next contends that the Cayuga Nation waived any sovereign immunity from suit to which it may be entitled, by paying taxes on some properties. However, a waiver of tribal sovereign immunity must be "clear." *Oklahoma Tax Com'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509, 111 S.Ct. 905, 909 (1991) ("Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver

14

by the tribe or congressional abrogation.") (citation omitted). The Cayugas' payment of taxes on certain parcels of property does not amount to such a waiver.

Finally, Defendant argues that the Cayugas should be estopped from claiming sovereign immunity from suit, since, in a separate action before the New York Court of Appeals, they indicated that they were paying property taxes on their lands. *See, Cayuga Indian Nation of New York v. Gould*, 14 N.Y.3d at 642, n. 11 ("The Cayuga Indian Nation acknowledges its obligation to pay real property taxes and comply with local zoning and land use laws on these parcels and it is undisputed that the Nation has, to date, fulfilled those obligations."). However, that language from the *Gould* decision referred specifically to the two "convenience store properties," one in Cayuga County and one in Seneca County, that were the subject of that decision, not to all tribe-owned parcels that had been purchased on the open market. Accordingly, the Cayugas are not estopped from claiming sovereign immunity from suit merely because they acknowledged that they were paying taxes on parcels unrelated to this action.

For the foregoing reasons, the Court finds that Plaintiff has demonstrated that the subject foreclosure actions are barred by the Tribe's sovereign immunity from suit, and that it is therefore entitled to preliminary injunctive relief.

CONCLUSION

Plaintiff's application for preliminary injunctive relief [#4] is granted.

SO ORDERED.

Dated:      August 20, 2012
            Rochester, New York

                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge

15

## CERTIFICATION OF SERVICE

This is to certify true and correct copy of **DEFENDANT GARDNER'S MEMORANDUM FOR PRELIMINARY INJUNCTIOIN AND TEMPORARY RESTRAINING ORDER**, foregoing document was delivered to following on this ___4___, day of September, 2012.

Jesse C. Trentadue
Carl F. Huefner
Noah M. Hoagland
Britton R. Butterfield
Sutter Axland, PLLC
8 East Broadway, Suite 200
Salt Lake City, Utah 84111

Marea A. Doherty
Deputy Duchesne County Attorney
P.O. Box 346
Duchesne, Utah 84021

J Preston Stieff
Attorney for Dean Reed
136 East South Temple, Suite 2400
Salt Lake City, Utah 84111-2221

Edson Gardner, Attorney Pro-Se,
Uintah Indian Descendant.

1