IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | | |
|---|---|---|
| HONORABLE CLAIR M. POULSON, in his official capacity as Judge of the Duchesne County Justice Court, and DEREK DALTON, | ) ) ) ) | Civil No.  2:12-CV-497 BSJ |
| Plaintiffs, | ) ) ) | **MEMORANDUM OPINION & ORDER (28 U.S.C. § 1303)** |
| vs. | ) ) | |
| TRIBAL COURT FOR THE UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION, et al., | ) ) ) ) | |
| Defendants; | ) ) | |
| EDSON GARDNER and LYNDA KOZLOWICZ, | ) ) ) | |
| Petitioners. | ) ) | |

```
┌─────────────────────────────┐
│           FILED             │
│  CLERK, U.S. DISTRICT COURT │
│    April 4, 2013 (3:49pm)   │
│      DISTRICT OF UTAH       │
└─────────────────────────────┘
```

* * * * * * * * *

On April 2, 2013, petitioners Edson Gardner and Lynda Kozlowicz, joined by defendants Athenya Swain and Johnny Slim, filed a paper captioned as a "Complaint Notice of Removal of Action, by Writ of Habeas Corpus from Ute Tribal Court" (CM/ECF No. 141).  The court has reviewed that paper and concludes that this court lacks jurisdiction to grant the relief that the petitioners seek.

**Habeas Corpus Relief Under 25 U.S.C. § 1303**

In 1961, a congressional committee began conducting a series of hearings to investigate complaints of civil rights violations in Indian country.  Felix S. Cohen, et al., *Cohen's Handbook of Federal Indian Law* § 14.04[2], at 951 (2005 ed.).  The committee eventually produced a bill

that imposed certain restrictions on tribal governments similar, but not identical, to the restrictions imposed on federal and state governments by the Bill of Rights and the Fourteenth Amendment. *Id.*; *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 57 (1978). In 1968, Congress enacted the Indian Civil Rights Act (ICRA) as Title II of the Civil Rights Act of 1968, Pub. L. No. 90-284, 82 Stat. 73. *Cohen's Handbook of Federal Indian Law* at 952. These "constitutional" limitations on the governmental powers of Indian tribes are codified at 25 U.S.C. § 1302. *Cohen's Handbook of Federal Indian Law* at 952.[1]

"[A] central purpose of the ICRA and in particular of Title I was to 'secur[e] for the American Indian the broad constitutional rights afforded to other Americans,' and thereby to 'protect individual Indians from arbitrary and unjust actions of tribal governments.'" *Martinez*, 436 U.S. at 60–61 (quoting S.Rep. No. 841, 90th Cong., 1st Sess., 5–6 (1967)). The *Martinez* Court observed that the intent of Congress in enacting ICRA was also "to promote the well-established federal 'policy of furthering Indian self-government.'" *Id.* at 62 (additional citations omitted). The provisions of ICRA thus reflect the commitment of Congress to protect tribal sovereignty from undue interference from federal and state government. *Id.* at 62, 63.

The *Martinez* Court noted that Title I of ICRA did not expressly authorize civil actions for declaratory or injunctive relief to enforce its provisions. *Id.* at 51–52. Congress expressly authorized only the writ of habeas corpus as a federal court remedy under § 1303 of ICRA for persons in tribal custody. *Id.* at 58; *see also Cohen's Handbook of Federal Indian Law* at 955

---

[1]The rights guaranteed by § 1302 are federal *statutory* rights rather than true constitutional rights because the constitutional provisions that limit federal or state authority do not apply to Indian tribes because the tribes retain powers of self-government that predate the Constitution. *See Talton v. Mayes*, 163 U.S. 376, 384 (1896); *Martinez v. Southern Ute Tribe*, 249 F.2d 915, 919 (10th Cir. 1957).

(The *Martinez* Court "interpreted ICRA to limit federal court enforcement to habeas corpus jurisdiction over claims by persons in tribal custody.").[2]  In light of Congress' dual objectives in enacting ICRA, the *Martinez* Court held that "[c]reation of a federal cause of action for the enforcement of rights created in Title I, however useful it might be in securing compliance with § 1302, plainly would be at odds with the congressional goal of protecting tribal self-government." *Martinez*, 436 U.S. at 64.  Further, implying a federal civil remedy "is not plainly required" because tribal forums are available to vindicate any infringement of rights provided by ICRA.  *Id.* at 65.  Absent express Congressional intent, the Court declined to imply a federal civil cause of action in addition to the habeas corpus remedy expressly provided for in § 1303.  *Id.*  Thus, § 1302 "does not impliedly authorize actions for declaratory or injunctive relief against either the tribe or its officers."  *Id.* at 72.  "Instead, tribal members have only one avenue to seek relief in federal court for violations of § 1302—filing a petition for writ of habeas corpus pursuant to 25 U.S.C. § 1303."  *Valenzuela v. Silversmith*, 699 F.3d 1199, 1203 (10th Cir. 2012) (citing *White v. Pueblo of San Juan*, 728 F.2d 1307, 1311 (10th Cir. 1984) ("The only remedy in federal courts expressly authorized by Congress in the ICRA is a writ of habeas corpus.")); *see also United States v. Becerra-Garcia*, 397 F.3d 1167, 1171 (9th Cir. 2005) ("We acknowledge that in the civil context, habeas corpus relief generally is the sole federal remedy for a violation of ICRA."); *Stevens v. Skenandore*, 2000 WL 1069404 (7th Cir. 2000) ("Stevens cannot sue the individual Oneida defendants under the ICRA because the only remedy authorized by the statute is a habeas corpus proceeding brought against the tribe pursuant to 42 U.S.C. § 1303.")

---

[2]25 U.S.C. § 1303 reads:"The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian Tribe."

-3-

A federal court has no jurisdiction to hear a petitioner's petition for habeas corpus relief under § 1303 unless the petitioner is (1) in custody and (2) has exhausted all tribal remedies. *See Jeffredo v. Macarro*, 599 F.3d 913, 918 (9th Cir. 2010) ("'[A]ll federal courts addressing the issue mandate that two prerequisites be satisfied before they will hear a habeas petition filed under the ICRA: The petitioner must be in custody, and the petitioner must first exhaust tribal remedies.'"); *Necklace v. Tribal Court of Three Affiliated Tribes*, 554 F.2d 845, 846 (8th Cir. 1977) ("[T]ribal remedies must ordinarily be exhausted before a claim is asserted in federal court under [§ 1303].").[3]  One seeking to invoke federal jurisdiction under § 1303 must demonstrate "'a severe actual or potential restraint on liberty.'" *Jeffredo*, 599 F.3d at 919 (quoting *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 880 (2nd Cir. 1996).  The Tenth Circuit has "recognized that '[t]he "detention" language in § 1303 is analogous to the "in custody" requirement contained in the [other] federal habeas statute[s].'" (quoting *Walton v. Tesuque Pueblo*, 443 F.3d 1274, 1279 n.1 (10th Cir. 2006)).[4]

Thus, federal court jurisdiction of a § 1303 habeas petition is only proper when the petitioner is somehow held "in custody." *Jeffredo*, 599 F.3d at 918 (citing *Moore*, 270 F.3d at

---

[3] Some courts have added a third requirement-that the tribal proceeding must have been criminal and not civil in nature.  *Cohen's Handbook of Federal Indian Law* at § 9.09 n.280; *see also Quair v. Sisco*, 359 F.Supp.2d 948, 963 (E.D.Cal. 2004) ("In order to be entitled to a writ of habeas corpus, petitioners must establish that the decision which they are requesting this court to review is criminal and not civil in nature; that petitioners are being detained by the Tribe; and that petitioners have exhausted all other available remedies.").

[4] The Ninth Circuit has similarly held that such restraint or "detention" as provided in the ICRA must be interpreted similarly to the "in custody" requirement in other habeas contexts. *Jeffredo*, 599 F.3d at 918; *see also Moore v. Nelson*, 270 F.3d 789, 791 (9th Cir. 2001) ("There is no reason to conclude that the requirement of 'detention' set forth in the Indian Civil Rights Act § 1303 is any more lenient than the requirement of 'custody' set forth in the other habeas statutes." (citation omitted)).

-4-

791); *see also Shenandoah v. U .S. Dept. of Interior*, 159 F.3d 708, 714 (2d Cir. 1998) ("Habeas relief does address more than actual physical custody, and includes parole, probation, release on one's own recognizance pending sentencing or trial, and permanent banishment"). As precedent demonstrates, a writ of habeas corpus is a measure reserved for only the most severe restraints on individual liberty—restraints that amount to some form of detention. *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara County, California*, 411 U.S. 345, 351 (1973).

This concept of custody for habeas corpus proceedings is not coextensive with a denial of an individual's liberty interest under the Fourteenth Amendment—or under § 1302(8). Rather, the custody required in habeas corpus proceedings is actual, physical custody or a substitute for such custody, such as release on bond. *See Lawrence v. 48th Dist. Court*, 560 F.3d 475, 480 (6th Cir. 2009).

**Petitioners' Claim for Habeas Relief**

From the paper filed by petitioners, it appears that the Ute Indian Tribe's Executive Director, with the approval of the tribal Business Committee, gave notice to Mr. Gardner and Ms. Kozlowicz in March 21, 2013 that they are suspended from practice as lay advocates before the Ute Tribal Court for a period of ninety days from and after March 21, 2013, indicating that "[y]ou may be reinstated to practice as lay advocates on June 19,2013."

The temporary suspension of one's license to practice as a tribal court advocate is simply not the "custody" required to sustain habeas corpus proceedings. In *Jeffredo*, the Ninth Circuit concluded that denial of access to certain Indian tribal facilities and services were not sufficient restraints to satisfy the detention requirement of § 1303. 599 F.3d at 919, 920. Such conditions and restrictions must significantly restrain one's liberty in order to invoke § 1303 habeas

jurisdiction. *Id.*; *compare Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874 (2nd Cir. 1996).

Therefore,

**IT IS ORDERED** that the petitioners' Complaint Notice of Removal of Action, by Writ of Habeas Corpus from Ute Tribal Court, filed April 2, 2013 (CM/ECF No. 141) is DENIED for lack of jurisdiction under 25 U.S.C. § 1303.

DATED this 4th day of April, 2013.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge